UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JAMES WHITE                                     CIVIL ACTION

VERSUS                                          NO.  09-6512

N. BURL CAIN, WARDEN                            SECTION "J"(4)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual and State Procedural Background

The petitioner, James White ("White"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On May 10, 2004, White was charged by bill of information with possession with intent to distribute cocaine.[3]

---

[1]Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. 4.

[3]St. Rec. Vol. 1 of 3,Bill of Information, 5/10/04.

The record reflects that, in the early morning hours of February 4, 2004, three members of the Washington Parish Sheriff's Office Drug Task Force were patrolling in two unmarked cars in a predominately residential area in Bogalusa, Louisiana.[4]  As the officers were traveling north on Second Street, they observed about five men standing in the driveway of an abandoned house near the intersection of Second Street and Sixth Street.

As the officers approached and stopped their vehicles, the men dispersed. White turned and began to walk east.  Deputy Kenneth Edwards exited the car, identified them as police, and ordered White to stop and return to him.  White continued to walk away and ignored the orders to stop.  Detective Scott Crain gave chase to White.  Detective Brent Goings followed Crain's radio communications and, as he turned onto Sixth Street, White, on foot, ran across the road in front of him.  White then turned and ran back to Second Street.  Detective Goings began to drive in reverse to pursue White.  He eventually stopped, exited the vehicle, and pursued White on foot.  While following White with his flashlight, he saw White drop something over a chain-link fence.

Detective Goings eventually caught up with White and tackled him to the ground.  Detective Cain approached and the officers restrained White.  Detective Goings retrieved a clear plastic wrapping that contained a substance later determined to be 3.69 grams of cocaine.  During a search incident to White's arrest, the officers recovered 66 small Ziploc bags inside a larger Ziploc bag and $833.00 in U.S. currency in his pockets.[5]

---

[4]The facts are taken from the unpublished opinion of the Louisiana First Circuit on direct appeal. *State v. White*, 956 So.2d 852 (La. App. 1st Cir. 2007) (Table); St. Rec. Vol. 3 of 3, 1st Cir. Opinion, 2006-KA-2229, pp. 3-4, 5/4/07.

[5]St. Rec. Vol. 1 of 3, Bill of Information, 5/10/04; Supplemental Report, Washington Parish Sheriff's Office, 2/04/04.

White was tried before a jury on April 25 and 26, 2005, and was found guilty as charged.[6] At a hearing held April 27, 2005, the Trial Court denied White's motions for new trial and for post-verdict judgment of acquittal.[7]  The State also filed a multiple bill charging White as a seventh felony offender, to which White chose not to enter a plea.[8]  The Trial Court later denied White's pro se motion for release from prison.[9]

At the hearing held May 4, 2005, counsel for White orally reurged the motions for new trial and for post-verdict judgment of acquittal.[10]  The Trial Court denied the motions and, after waiver of delays, the Court sentenced White to serve 10 years at hard labor with the first two years to be without benefit of probation, parole, or suspension of sentence.[11]  The Court also denied the defense's motion to reconsider the sentence.[12]

Defense counsel filed another motion for new trial on June 3, 2005, which the Trial Court denied.[13]

---

[6]St. Rec. Vol. 1 of 3, Trial Minutes, 4/25/05; Trial Minutes, 4/26/05; Verdict Form, 4/26/05; St. Rec. Vol. 2 of 3, Trial Transcript, 4/25/05; Trial Transcript, 4/26/05.

[7]St. Rec. Vol. 1 of 3, Minute Entry, 4/27/05; Motion for Post-Verdict Judgment of Acquittal, 4/27/05; Trial Court Order (1), 4/27/05; Motion for New Trial, 4/27/05; Trial Court Order (2), 4/27/05; St. Rec. Vol. 2 of 3, Motion Hearing Transcript, 4/27/05.

[8]*Id.*; St. Rec. Vol. 1 of  3, Multiple Bill, 4/27/05.

[9]St. Rec. Vol. 1 of 3, Motion for Release, 4/28/05; Trial Court Order, 5/4/05.

[10]St. Rec. Vol. 1 of 3, Sentencing Minutes, 5/4/05; St. Rec. Vol. 2 of 3, Sentencing Transcript, 5/4/05.

[11]*Id.*

[12]St. Rec. Vol. 1 of 3, Motion to Reconsider Sentence, 5/4/05; Trial Court Order, 5/4/05.

[13]St. Rec. Vol. 1 of 3, Motion for New Trial, 6/3/05; Trial Court Order, 6/21/05.

The Court held a hearing on the multiple bill on July 7, 2005.[14]  The Court found White to be a multiple offender and sentenced him to life imprisonment without benefit of parole, probation, or suspension of sentence.[15]  The Court later denied White's motion to reconsider that sentence.[16] The Court would later deny White's *pro se* motions to recuse the judge, to prevent the officers from carrying guns in the courtroom, and for production of documents.[17]

On direct appeal, White's appointed counsel asserted three assignments of error:[18] (1) the Trial Court erred in denying the motion for mistrial or for new trial based on the State's failure to inform the defense of its intent to introduce a statement made by White to police after his arrest; (2) the Trial Court erred in qualifying Lieutenant Ray Lentz as an expert in narcotics distribution; and (3) the Trial Court erred in adjudicating White to be a multiple offender.  Counsel also requested that the Court conduct an errors patent review.  White also was granted leave to and he did file *pro se* a supplemental brief in which he made additional arguments in support of counsel's third assignment, that the Trial Court erred in finding him to be a multiple offender.[19]

---

[14]St. Rec. Vol. 1 of 3, Multiple Bill Hearing Minutes, 7/7/05; St. Rec. Vol. 2 of 3, Multiple Bill Hearing Transcript, 7/7/05.

[15]*Id.*

[16]St. Rec. Vol. 1 of 3, Motion to Reconsider Sentence, 7/13/05; Trial Court Order, 7/25/05.

[17]St. Rec. Vol. 1 of 3, Motion Hearing Minutes, 10/6/05; Motion for Recusation of Judge, 7/27/05; Trial Court Order, 8/24/05; Motion for Law Enforcement re Possession of a Firearm in Courtroom Prohibition, 7/27/05; Motion for Production of Documents, 10/3/05; Judgment with Reasons, 11/29/05.

[18]St. Rec. Vol. 3 of 3, Appeal Brief, 2006-KA-2229, 2/27/09.

[19]St. Rec. Vol. 3 of 3, *Pro Se* Appeal Brief, 2006-KA-2229, 2/27/07; Motion to File *Pro Se* Supplemental Brief, 2006-KA-2229, 12/12/06; 1st Cir. Order, 2006-KA-2229, 12/19/06; 1st Cir. Order, 2006-KA-2229, 2/6/07.

The Louisiana First Circuit Court of Appeal affirmed White's conviction and sentence on May 4, 2007, finding no merit in his claims and no errors patent on the record.[20]  On December 14, 2007, the Louisiana Supreme Court denied White's related writ application which had been submitted to that Court on May 30, 2007.[21]  White's conviction became final 90 days later, on March 13, 2008, because he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

In the meantime, on February 18, 2008, White submitted to the Trial Court an application for post-conviction relief in which he raised the following grounds:[22] (1) the arresting officers did not have probable cause to initiate a stop, therefore the evidence seized should have been suppressed; and (2) counsel gave ineffective assistance where he (a) failed to file a motion to suppress based on the lack of probable cause to stop him, (b) elicited evidence of prior crimes, (c) failed to challenge juror Bernadette Guillory for cause or by peremptory challenge, (d) failed to object to the prosecution's leading questions of Lt. Lentz, and (e) failed to object to the prosecution's mischaracterization of the evidence and his improper vouching for the state witnesses in closing argument.

---

[20]*State v. White*, 956 So.2d at 852; St. Rec. Vol. 3 of 3, 1st Cir. Opinion, 2006-KA-2229, pp. 3-4, 5/4/07.

[21]Counsel for the State failed to provide this Court with a copy of the Louisiana Supreme Court writ application, in spite of the Court's briefing order requiring her to do so.  *State v. White*, 970 So.2d 530 (La. 2007); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2007-KO-1242, 12/14/07; La. S. Ct. Letter, 2007- KO-1242, 6/13/07 (showing postal meter 5/30/07).

[22]St. Rec. Vol. 3 of 3, Uniform Application for Post-Conviction Relief, 2/22/08 (dated 2/18/08).

On March 25, 2008, the Trial Court denied the application finding no merit to his claims.[23] The Court resolved that the officers had the right to engage the men in conversation and White's actions, including running and throwing the object, gave them probable cause to pursue him and stop him.  The Court also held that White failed to meet the test for ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984), and related state law.

White sought review of this ruling in the Louisiana First Circuit.[24]  On July 21, 2008, the Court denied the application and denied relief on the claim regarding the challenge to the juror on the showing made.[25]  The Court indicated that if White chose to file a new application raising the juror claim with the voir dire transcript, he would have to do so on or before September 19, 2008. He did not do so.[26]  The Louisiana Supreme Court denied White's related writ application on May 29, 2009.[27]

**II.    <u>Federal Petition</u>**

On October 16, 2009, the clerk of this Court filed White's petition for federal habeas corpus relief in which he raised five grounds for relief:[28] (1) the Trial Court erred in denying the motion for mistrial or for new trial based on the State's failure to inform the defense of its intent to introduce

---

[23]St. Rec. Vol. 3 of 3, Judgment with Reasons, 3/25/08.

[24]Counsel for the State again failed to provide the Court with a copy of this writ application, in spite of the Court's briefing order requiring her to do so.

[25]St. Rec. Vol. 3 of 3, 1st Cir. Order, 2008-KW-0783, 7/21/08.

[26]A member of the Court's staff was informed by the office of the Louisiana First Circuit that White made no other filings in that Court.

[27]Counsel for the State also failed to provide the Court with a copy of this writ application, in spite of the Court's briefing order requiring her to do so.  *State ex rel. White v. State*, 9 So.3d 158 (La. 2009); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2008-KH-2129, 5/29/09; La. S. Ct. Letter, 2008-KH-2129, 8/28/08 (showing postal meter 8/21/08).

[28]Rec. Doc. No. 3.

a statement made by White to police after his arrest; (2) the Trial Court erred in qualifying Lt. Lentz

as an expert in narcotics distribution; (3) the Trial Court erred in adjudicating him to be a multiple

offender; (4) the arresting officers did not have probable cause to initiate a stop, therefore the

evidence seized should have been suppressed; and (5) counsel gave ineffective assistance where he

(a) failed to file a motion to suppress evidence based on the lack of probable cause to stop him, (b)

elicited evidence of prior crimes, (c) failed to challenge juror Bernadette Guillory for cause or by

peremptory challenge, (d) failed to object to the prosecution's leading questions of Lt. Lentz, and

(e) failed to object to the prosecution's mischaracterization of the evidence and his improper

vouching for the state witnesses in closing argument.

       The State filed an answer and memorandum in opposition to White's petition arguing that

the ineffective assistance of counsel claim arising from the failure to challenge the juror was in

procedural default.[29]  The State further argues that the first three claims are based on state law and

are not appropriate for federal habeas review and the remaining claims are without merit.  The State

argues that the petition therefore should be denied.

## III.   General Standards of Review

       The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-

132, 110 Stat. 1214,[30] applies to this petition, which is deemed filed in this court under the federal

---

[29]Rec. Doc. Nos. 11, 12.

[30]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and
applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th
Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify
an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become
effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

mailbox rule on September 21, 2009.[31]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c) (2006)).

The State concedes that White's petition is timely and his claims are exhausted.  The State also suggests that one facet of the ineffective assistance of counsel claim regarding the failure to challenge juror Guillory is in procedural default.  The Court disagrees.  There is no indication in the Louisiana First Circuit's order that it clearly relied on a particular state procedural rule to deny relief on that claim.  While the Court did reference the fact that White did not include the voir dire transcript, the Court actually denied relief on the showing made.  It did not reject the petition or dismiss it on procedural grounds discernable from its opinion.  For these reasons, the Court finds that the State's conclusory defense regarding procedural default of this claim is meritless.

## IV.    **Merits Review Standard**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

---

[31]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed White's federal habeas petition on October 16, 2009, when the filing fee was paid.  White dated his signature on the memorandum submitted with his petition on September 21, 2009.  This is presumed to be the earliest date on which he could have delivered it to prison officials for mailing.  The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition.  *See Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304

(1992).  The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law.  *See, e.g., id.* at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir. 2000), *cert. denied*, 531 U.S. 1002 (2000).  "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  *Price*, 538 U.S. at 641 (quoting  *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

**V.** **Analysis**

   **A.** **Denial of the Motion for Mistrial or for New Trial**

White alleges that the state trial court erred when it denied the defense motion for mistrial and motion for new trial, which were based on the State's failure to inform the defense of its intent to introduce a statement made by White to police after his arrest.  White claims that the State violated rules of discovery in failing to provide the notice.

The State argues that the claim does not raise a basis for federal habeas relief and that White has failed to establish prejudice since the statements were not admitted into evidence.

White's appointed counsel first raised this claim on direct appeal. The Louisiana First Circuit found the claim to be without merit. The Court first noted from the record that defense counsel provided the State with a document related to White's tax-refund. Thereafter, the police officers recalled that White made a comment that he was upset about the forfeiture of his tax-refund. The Court determined that the prosecutor's general reference to White's statement was not an improper comment for opening argument under La. Code Crim. P. 770 and 771,[32] and the statement itself was not inculpatory.

The Court further resolved that, because the statement was not admitted into evidence, the notice requirement was not triggered. Also, the Court noted that the jury had been properly instructed that the opening and closing statements and arguments of counsel were not evidence. The Court, therefore, found no basis for the trial court to have granted the motion for mistrial or the motion for new trial. This was the last reasoned opinion on the issue. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991).

White's arguments that the trial court erred in denying the motions for mistrial and for new trial under state law do not involve consideration of any questions of federal or constitutional law, and review of such claims is not proper on habeas review. *See Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir. 1988) (the failure to grant a mistrial is a matter of state law and not one of a constitutional dimension); *Haygood v. Quarterman*, 239 Fed. Appx. 39, 42 (5th Cir. Jun.14, 2007) (state court's denial of a motion for a new trial does not necessarily constitute a violation of a federal constitutional right) (citing *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir.1991)). Habeas corpus review instead is limited to questions of federal constitutional dimension, and federal courts do not

---

[32]These articles would require the granting of a mistrial when an improper remark or comment is made by the prosecution within the hearing of the jury.

review alleged errors in the application of state law.  *See Swarthout v. Cooke*, __ U.S. __, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of or in applying state law); *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) and *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), and citing *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996)); *accord Turner v. Johnson*, 46 F. Supp.2d 655, 674 (S.D. Tex. 1999).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68; *see also Molo v. Johnson*, 207 F.3d 773, 776 n.9 (5th Cir. 2000) ("Federal habeas review does not extend to state court conclusions of state law."); *Hogue v. Johnson*, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal habeas review).  Thus, federal habeas corpus relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law simply will not suffice. 28 U.S.C. § 2254; *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Prieto v. Quarterman*, No. Civ. SA:01-CA-11450G, 2006 WL 4059282, at *5 (W.D. Tex. Dec.18, 2006), *aff'd*, No. 07-70001, 2008 WL 4218822 (5th Cir. Sep. 15, 2008).

Here, White claims that the prosecutor violated state discovery rules and, as a result, the state trial court erred under state law in denying his motions for mistrial and for new trial.  For the reasons set forth above, his claims of impropriety based on state law do not warrant federal habeas review or relief.

Under a broad reading, White appears to argue that the trial court's error was prejudicial to his trial and contributed to the guilty verdict.[33]  Construing his habeas petition broadly, it appears that White argues that the denial of his motions for mistrial and for new trial violated due process

---

[33]*See* Rec. Doc. No. 3, p. 17.

by allowing the reference to his statement to be made before the jury and in denying him the opportunity to have his statement to police excluded from trial.

First, as noted by the state courts and the respondent to this federal petition, White's statement was not admitted into evidence and the prosecution made no further reference to it.  Thus, the focus is not on admission of the statement but on the prosecutor's general reference to it.  Focusing on the prosecutor's opening statement, White has shown no prejudice resulting therefrom.

During opening arguments, the prosecutor outlined for the jury the story that would unfold as demonstrated by the evidence and testimony to come.  In doing so, he noted that they would see evidence that White had received a large sum of money as a tax refund advance loan.[34]  The prosecutor also made the following statement regarding White's actions after he was arrested:[35]

> The defendant made a statement.  It was interesting what he said and what he did not say.  What he said was he was upset about the forfeiture and made no comments about the ownership or possession of the drugs.

After he completed his statement, defense counsel objected noting that no such statement had been produced in discovery.[36]  Counsel had no problem with the reference to White's complaints about the forfeiture, but objected to the implication that White did not complain about the drugs.  He indicated that he would have filed a motion to suppress the statement and requested a mistrial.

The State responded, as noted by the state appellate court, that it was defense counsel who provided the state with a copy of White's tax refund information after jury selection.  The prosecutor stated that, upon reviewing the form with the police officers that morning, they recalled White's

---

[34]St. Rec. Vol. 2 of 3, Trial Transcript, p. 8, 4/26/05.

[35]*Id.*, p. 12.

[36]*Id.*, p. 15.

13

complaints about the forfeiture.  The prosecutor did not consider the statement to be exculpatory and instead thought it to be *res gestae* in nature.  The trial court agreed and denied the motion for mistrial.

The transcript makes clear that defense counsel presented the tax documents as part of a defense strategy to explain the large amount of cash in White's possession at the time of his arrest.[37] Counsel, for that reason, did not object to that part of the statement.  Instead, the complaint is directed at the second part of the statement, that White "made no comments about the ownership or possession of the drugs."  Under a broad reading, White suggests that this misled and prejudiced the jury by implying that, while he complained about the money, he did not deny owning the drugs. While the Court believes this to be overreaching, White nonetheless has not established that the comment in any way impacted the jury's verdict.

Under federal law, "it 'is not enough that the prosecutor['s] remarks were undesirable or even universally condemned.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Darden v. Wainwright*, 669 F.2d 1031, 1036 (8th Cir. 1983)).  Instead, White must establish that the prosecutor's remarks "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  To satisfy this requirement, White must show "that the [prosecutor's] misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks."  *Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988).  The Court must ask "whether there is a reasonable probability that the verdict might have

---

[37]*Id.*, pp. 89-90, *see also*, pp. 8, 96-97, 105.

been different had the trial been properly conducted." *Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988) (quoting *Kirkpatrick v. Blackburn*, 777 F.2d 272, 278-79 (5th Cir. 1985)).

As noted by the state appellate court, the state trial court instructed the jury that "[t]he opening statements are not evidence but are an outline of what the lawyers contend will or will not be shown by the evidence."[38]  At the conclusion of the evidence, the state trial court again properly charged the jury that "the statements and arguments made by the attorneys are not evidence . . . The opening statements and the closing arguments are not to be considered as evidence."[39]  The Court made clear to the jury that no evidentiary weight was to be given to the prosecutor's opening argument.  The prosecutor also made no further reference to the statement itself.

The record does not support a finding that the prosecutors engaged in misconduct in making reference to the fact that White was upset about the forfeiture.  As noted above, there is nothing to indicate that the jury construed the statement to suggest White conceded his ownership of the drugs. The prosecutor merely stated that White was without comment on that point.  To the extent the statement could be read to suggest otherwise, there is certainly no evidence that the remark infected the trial.

First, the state trial court properly charged the jury as to the value of the opening statement. With this, the jury knew to give no evidentiary weight to the prosecutor's remarks.

Second, based on the overwhelming evidence of guilt, there is nothing in the record to suggest that the remark had a substantial impact on the verdict.  The jury heard the testimony of the

---

[38]*Id.*, p. 6.

[39]*Id.*, p. 110.

officers that White unexplainably ran when approached by the officers.[40]  He ignored their requests to stop and continued instead to run away.[41]  He was then seen throwing the drugs over a fence when it appeared he would be caught.[42]  He was in possession of dozens of plastic bags and a substantial amount of cash, commensurate with drug sales.[43]  Any fleeting reference by the prosecutor that White had made no comment to police about the drugs was insignificant in light of the evidence of guilt.

White has failed to establish that the prosecutor's comments were unconstitutionally prejudicial to his trial.  He therefore has not shown prejudice arising from the trial court's denial of the motions for mistrial and for new trial based on the prosecutor's comments.  The state courts' denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court law.  White is not entitled to relief on this claim.

### B.    Trial Court Erred in Qualifying Lt. Lentz as an Expert

White argues that the state trial court erred in qualifying Lt. Ray Lentz as an expert in narcotics.  He suggests that Lt. Lentz did not have the experience necessary to be an expert.  White also argues that the erroneous qualification was prejudicial, because Lt. Lentz was allowed to testify with regard to the element of intent to distribute when he did not have the experience to be an expert.

The State argues that this claim is one based on state law and White therefore failed to present a basis for federal habeas relief.  In addition, White has not shown an error in the state courts' ruling.

---

[40]*Id.*, pp. 20, 43.

[41]*Id.*, p. 21.

[42]*Id.*, pp. 23-24, 43, 45-46.

[43]*Id.*, pp. 30-31, 48, 51, 52, 78-79.

White raised this claim on direct appeal, and the Louisiana First Circuit denied relief finding no error under state law or abuse of the trial court's discretion in allowing Lt. Lentz to testify as an expert.  This was the last reasoned decision on the issue.  *See Ylst,* 501 U.S. at 802.

The trial court's decision to accept Lt. Lentz as an expert is a matter of state law which is not subject to re-examination by this federal court on habeas review.  As noted above, it is not "the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle*, 502 U.S. at 67-68.  "[A] federal court may grant habeas relief based on an erroneous state court evidentiary ruling only if the ruling also violates a specific federal constitutional right or renders the petitioner's trial fundamentally unfair." *Gochicoa v. Johnson*, 118 F.3d 440, 446 (5th Cir. 1997).  A petitioner is entitled to federal habeas relief for a trial error of this nature only if such error is not harmless and had a substantial effect or influence in determining the verdict.  *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).

White, in this case, must first show that an error occurred, and he has not done so.  The error he alleges was the trial court's acceptance of Lt. Lentz as an expert.  The Louisiana courts have adopted the standards of *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), in addressing the admissibility of expert testimony.  *State v. Foret*, 628 So.2d 1116 (La. 1993).  The *Foret* court established that *Daubert* requires that "expert scientific testimony must rise to a threshold level of reliability in order to be admissible under La. Code Ev. art. 702."  *Id*., at 1123. The United States Supreme Court has clarified, however, that *Daubert* applies to all types of expert testimony.  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).  A trial court's decision to

admit or exclude expert testimony is subject to the "abuse of discretion" standard. *Kumho*, 526 U.S. at 152; *State v. Craig*, 699 So.2d 865, 870 (La. 1997).

In evaluating whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts at issue, the *Daubert* Court set forth some factors to be considered: (1) a theory or technique can be or has been tested; (2) it has been subjected to peer review or has been published; (3) there is a high known or potential rate of error; (4) there are standards controlling the technique's operation; and (5) the theory enjoys general acceptance in the relevant scientific community. *Daubert*, 509 U.S. at 592–593. The Louisiana court's are to use these considerations in determining whether to allow an expert to testify under La. Code Ev. art. 702, which provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

La. Code Ev. art. 702 permits the admission of expert testimony when the witness is qualified by "knowledge, skill, experience, training, or education." In determining whether to accept a witness as an expert, the trial court has great discretion under Louisiana law. The state courts have recognized that experience alone may be sufficient to qualify a person as an expert. *State v. Hurst*, 828 So.2d 1165, 1172 (La. App. 4th Cir. 2002) (citing *Belle Pass Terminal, Inc. v. Jolin, Inc.*, 634 So.2d 466, 477 (La. App. 1st Cir. 1994); *see also State v. Catchings*, 440 So.2d 153, 157 (La. App. 4th Cir. 1983) ("Experience, as well as special training, can qualify an individual as an expert witness").

In White's case, the State sought to prove his intent to distribute by producing the expert testimony of Lt. Lentz and other evidence to show that the amount of drugs and other items found

in White's possession were inconsistent with personal use.  This appears to be a commonly accepted

method used by prosecutors in Louisiana.  *See State v. Johnson*, 52 So.3d 110, 121 (La. App. 5th

Cir. 2010).

Lieutenant Lentz testified that, at the time of trial, he had been in law enforcement for 19

years, including some military experience as a Sergeant in the Marines, but he had never had the

opportunity to be qualified as an expert.[44]  He had been with the Washington Parish Sheriff's Office

for the prior three of those years.  Prior to that, he was with the St. Tammany Parish Sheriff's Office

for 16 years, and had not been in the narcotics unit there.

Lieutenant Lentz had been the director of the Drug Task Force for the Washington Parish

Sheriff's Office for about three years.  His duties included managing the daily activities of the task

force, overseeing three narcotics agents, and overseeing all narcotics operations by the task force.

He reviewed all reports generated by the task force officers.  He also provided training and education

to the officers.  He also interacted with other law enforcement agencies in Mississippi and Louisiana.

On his personal experience, Lt. Lentz indicated that he was post-certified at the police

academy at Louisiana State University and received other training in numerous areas including but

not limited to supervisor of computer skills, raid planning, and high risk warrant service.  He

attended a narcotic training conference by the Louisiana Sheriff's Association, including basic

narcotics investigation, narcotics identification and presumptive testing, and search and seizure.  He

attended a methamphetamine conference at the Regional Organized Crime Information Center.  He

also received a laboratory investigation and safety certification from the Drug Enforcement Agency

("DEA").  He attended the Louisiana Sheriff's Association training conference on violent crime and

---

[44]St. Rec. Vol. 2 of 4, Trial Transcript, pp. 67-75, 4/26/05.

narcotics.  He has received training in compliance investigation, pharmaceutical diversion, highway interdiction and drug asset forfeiture, officer standards, and training counselors.  He participated in Operation Jet Way through the DEA 2005 LSA narcotics training conference.

Part of his duties include training other officers on recognizing drugs and packaging for consumption or retail and rendering opinions to other law enforcement agencies relative to price and quantities of drugs in the Washington Parish area.  Lieutenant Lentz further testified that he has participated in over a thousand narcotics investigations, and he is familiar with items associated with the use and sale of crack cocaine.  He advised that he was comfortable providing his opinion to the jury about pricing and packaging of crack cocaine based on his knowledge and daily experience.

Lieutenant Lentz indicated his ability to formulate pricing and packaging information for the Washington Parish area based on his extensive training and practical application.  He indicated that he monitored the pricing and sales in the area as part of his duties.  He demonstrated sufficient knowledge, skill, training, education, and experience in those areas to assist the jury in understanding the evidence presented at White's trial.

Based on the record, there was factual basis to support the state trial court's decision to allow or qualify Lt. Lentz as an expert in narcotics.  Furthermore, the decision to qualify Lt. Lentz was not contrary to, or an unreasonable application of, federal law, including *Daubert*.  As a result, White has failed to demonstrate an error by the state trial court in qualifying Lt. Lentz as an expert. Without such an error, he has failed to demonstrate a violation of his constitutional rights or denial of due process cognizable before this federal habeas court.  He therefore is not entitled to relief on this claim.

### C.      The Trial Court Erred in Adjudicating Him to Be a Multiple Offender

White argues that the state trial court erred in finding him to be a multiple offender, because the prior convictions relied upon were all obtained on the same day prior to October 19, 2004. Under Louisiana law, each of the convictions were required to be considered as one for enhancement purposes.

The State argues in opposition that this claim is solely based on state law and is not appropriate for federal habeas review.

White raised this claim on direct appeal, and the Louisiana First Circuit denied relief finding that the State was allowed to use the predicate offenses in the multiple bill proceedings and that there was no violation under state law in place at the time of the instant offense.  This was the last reasoned decision on the issue.  *Ylst*.

As repeated several times herein, habeas corpus review is limited to questions of federal constitutional dimension, and federal courts do not review alleged errors in the application of state law.  *See Swarthout*, 131 S. Ct. at 861 (federal habeas review does not lie for errors of or in applying state law).  Thus, White's claims alleging that the state trial court violated state law in finding him to be a multiple offender is not cognizable before this Court on habeas review.

Although he makes no such allegation, the Court finds that the record also does not demonstrate that his federal constitutional rights were violated to warrant federal habeas review under the Due Process Clause.  In White's case, he was charged in the multiple bill with prior

convictions all of which were obtained against him on December 10, 1996.[45]  Those convictions were possession of cocaine, burglary, theft, and two for distribution of cocaine.[46]

According to the Louisiana First Circuit, under Louisiana law, the multiple offender laws applicable to White's case were those in place at the time of his offense, which was February 2, 2004.[47]  The Court held, citing *State v. Johnson*, 884 So.2d 568, 579 (La. 2004), that at that time of his offense, Louisiana law did not have a prohibition regarding the use of convictions obtained on the same date.  *See also*, *Butler v. Cain*, 327 Fed. Appx. 455 (5th Cir. 2009) (outlining Louisiana habitual offender laws in 2005).  The legislature did not amend the habitual offender law found at La. Rev. Stat. Ann. § 15:529.1(B) until later, and that amendment was effective August 15, 2005.  Because White's offense occurred prior to the effective date of the amendment, the amendment did not apply to him.  The appellate court therefore found his claim meritless.  The Louisiana Supreme Court denied White's writ application, thereby acquiescing to these findings.  *See Ylst,* 501 U.S. at 802.

White has not shown an error by the appellate court from which he suffered a prejudice or violation of his constitutional rights.  *Cf.*, *Butler*, 327 Fed. Appx. at 455 (decision in *State v. Johnson* did not violate ex post facto clause).  For these reasons, there is no cognizable due process claim for this Court to review.

---

[45]St. Rec. Vol. 1 of 3, Multiple Bill, 4/27/05; St. Rec. Vol. 3 of 3, 1st Cir. Opinion, 2006-KA-2229, pp. 10-14, 5/4/07.

[46]*Id*.

[47]St. Rec. Vol. 3 of 3, 1st Cir. Opinion, 2006-KA-2229, pp. 10-14, 5/4/07.

D.      **Lack of Probable Cause**

White alleges that the police officers did not have probable cause to initiate a stop; therefore the evidence seized in violation of the Fourth Amendment should have been suppressed from trial. The State argues that the officers had a right to approach White to converse with him and did not need suspicion of a crime to do so.  Further, his suspicious behavior of running from the officers and ignoring their commands gave the officers probable cause to pursue and arrest him.

White raised this claim in his application for post-conviction relief, which was denied as meritless by the Trial Court.  The Court held that, under Louisiana law, White's flight from the officers and discarding of an object supported a finding of probable cause, especially in light of the events occurring in an area known for narcotics trafficking.  The Louisiana First Circuit and the Louisiana Supreme Court denied relief on the claim without stated reasons.

Fourth Amendment violations are generally not cognizable on federal habeas review.  *Stone v. Powell*, 428 U.S. 465 (1976).  In *Stone v. Powell*, the United States Supreme Court held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." (footnotes omitted) *Id.*, 428 U.S. at 494.  A "full and fair" hearing as contemplated by *Stone v. Powell* refers to thoughtful consideration by the factfinder and at least the availability of meaningful appellate review by a higher state court. *Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986) (per curium) (quoting *O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir. 1977)).

The United States Court of Appeals for the Fifth Circuit has further interpreted an "opportunity for full and fair litigation" to mean just that, "an opportunity." *Caver v. Alabama*, 577

F.2d 1188, 1192 (5th Cir. 1978); *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002), *cert. denied*, 537 U.S. 1196 (2003). "If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes." *Caver*, at 1192.

Thus, it is the opportunity to present a Fourth Amendment claim to the state courts that is the basis of the *Stone v. Powell* prohibition, without regard for whether that opportunity is actually exercised or is unsuccessful. *Janecka*, 301 F.3d at 320-21. Even if a defendant fails to take advantage of the opportunity to litigate a motion to suppress or assert Fourth Amendment claims, the fact that the opportunity existed suffices for the *Stone v. Powell* bar to apply. *Id*., at 320. The Fifth Circuit has also held that the *Stone v. Powell* bar applies despite an error by the state court in deciding the merits of the Fourth Amendment claim. *Swicegood v. Alabama*, 577 F.2d 1322, 1324-1325 (5th Cir. 1978).

Therefore, "in the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way to prevent the actual litigation of fourth amendment claims on the merits, the rationale of *Caver* dictates that *Swicegood*'s application of *Stone* despite a mistake in adjudicating the merits must apply with equal force to procedural mistakes that thwart the presentation of fourth amendment claims." *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980); *see also*, *Janecka*, 301 F.3d at 321 (same). Absent any plea or proof by the petitioner that he was denied a full and fair hearing in state court, his request for federal habeas relief based upon a Fourth Amendment violation is precluded. *Stone*, 428 U.S. at 494-95 n.37; *Bell v. Lynaugh*, 828 F.2d 1085, 1091-92 (5th Cir. 1987); *Davis v. Blackburn*, 803 F.2d 1371, 1372 (5th Cir. 1986). Moreover, "[i]t is beyond cavil that Louisiana

courts provide criminal defendants the opportunity to raise Fourth Amendment claims." *Bailey v. Cain*, No. 06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007) ( Duval, J.) (order adopting referenced Report and Recommendation). White does not allege or demonstrate that Louisiana state courts routinely or systematically preclude litigation of a defendant's Fourth Amendment claims, and as will be shown he received appropriate review in the state courts.

In this case, White raised his Fourth Amendment claims, that the evidence should have been suppressed because the police lacked probable cause to stop him, in his application for post-conviction relief in the state trial court. As outlined above, the state trial court denied the claim based on state law which demonstrated that the police had probable cause and the stop was not unlawful. The Louisiana First Circuit denied his subsequent writ, as did the Louisiana Supreme Court.

The record demonstrates that White was provided with ample opportunity to present his Fourth Amendment claims, although his efforts were unsuccessful. Contrary to his suggestion, the facts surrounding the Fourth Amendment arguments he makes are not in dispute, although he disagrees with the legal conclusions resolved against him.

After reviewing the record, the Court finds that "the material facts were adequately developed in state court, and [petitioner] has not alleged any undeveloped evidence sufficient to call into question the reliability of the state court's determination of [his] federal claims." *Andrews v. Collins*, 21 F.3d 612, 631 (5th Cir. 1994). Each of the state courts considered and reviewed his arguments finding them to be without merit. *Accord*, *Ylst*. The review at all levels of the state courts was sufficient to meet due process requirements.

White is not entitled to federal habeas court review of his Fourth Amendment claims. Because he received and exercised the opportunity for a full and fair hearing in the state courts, *Stone v. Powell* bars consideration of White's Fourth Amendment claims here.

### E.    Ineffective Assistance of Counsel

White alleges that his counsel provided ineffective assistance based on several reasons set forth in the following discussion.  He raised these grounds in his application for post-conviction relief, which was denied by the Trial Court based on the standards set forth in *Strickland*, and related state law on the basis that White failed to meet either prong of that test.  The State argues in its opposition that White has failed to meet the *Strickland* standards.

The issue of ineffective assistance of counsel is a mixed question of law and fact.  *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994).  Thus, the question before this court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

The standard for judging the performance of counsel was established by the United States Supreme Court in *Strickland*, 466 U.S. at 668, relied upon by the Trial Court.  In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.  *See Strickland*, 466 U.S. at 697.  To meet the burden of proving ineffective assistance of counsel, the petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  *Jernigan*, 980 F.2d at 296; *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000), *cert. denied*, 531 U.S. 1167 (2001).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88; *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). The analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all of the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). Furthermore, "[t]o meet the prejudice prong, the [petitioner] must affirmatively prove, and not merely allege, prejudice." *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *Theriot v. Whitley*, 18 F.3d 311, 314-15 (5th Cir. 1994). In this context, a reasonable probability of prejudice is "a probability sufficient to undermine confidence in the outcome." *Id.* In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the

outcome in the case.'  But it is not enough, under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'"  *Motley*, 18 F.3d at 1226 (quoting *Strickland*, 466 U.S. at 693).  Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)), *cert. denied*, 531 U.S. 849 (2000).

In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  *Kimler*, 167 F.3d at 893.  On habeas review, scrutiny of counsel's performance "must be highly deferential" and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance."  *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 689-90); *Mattheson*, 751 F.2d at 1441.

Before proceeding to White's individual complaints about counsel, the Court notes that White suggests in his pleadings that counsel's "errors" should be considered collectively to establish that he is entitled to habeas relief.  Such is not the case.  When, as set out below, the individual contentions are meritless, that result cannot be changed simply by asserting them collectively. *United States v. Hall*, 455 F.3d 508, 520 (5th Cir. 2006); *Miller*, 200 F.3d at 286 n.6.  As the United States Fifth Circuit noted with respect to analogous claims of cumulative error: "Twenty times zero equals zero."  *Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987).  The Court will discuss each of the individual claims raised by White.

(a)      **Failed to File a Motion to Suppress**

White first alleges that counsel erred in failing to file a motion to suppress the evidence based on the lack of probable cause to stop him.  The State argues that there was no basis for such a motion and counsel was not deficient or prejudicial to White in failing to urge a meritless motion.

Where defense counsel's failure to litigate a Fourth Amendment claim is the basis for an ineffective assistance claim, the defendant must also prove that any such motion would have been meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.  *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."); *see also Garland v. Maggio*, 717 F.2d 199, 205-206 (5th Cir. 1983) (rejecting petitioner's claim that his counsel was ineffective for failing to file a motion to suppress on grounds that such a motion "would not have been successful [so defendant] suffered no prejudice.").

In the case at bar, defense counsel did not file a pretrial motion to suppress the evidence. However, for the following reasons, such a motion would not have succeeded on the merits and White thus cannot claim deficiency in performance or prejudice.

In order to prevail on a motion to suppress, White would have had to prove that the stop which led to the recovery of the crack cocaine constituted an unreasonable stop and/or seizure in violation of the Fourth Amendment.  Under the Fourth Amendment, an officer may make a brief investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.  *See Terry v. Ohio*, 392 U.S. 1 (1968).  The officer's basis for the stop must be more than an

"unparticularized suspicion or hunch of criminal activity." *Illinois v. Wardlow*, 528 U.S. 119 (2000). Instead, "[r]easonable suspicion must be supported by particular and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant an intrusion." *United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994). Further, the court must consider the totality of the circumstances, since ordinary, innocent behavior "may provide a composite picture sufficient to raise reasonable suspicion in the minds of experienced officers ..." *United States v. Holloway*, 962 F.2d 451, 459 (5th Cir. 1992) (footnote omitted). The demeanor and behavior of the suspect may also give rise to reasonable suspicion, but may not be sufficient as the only factor present. *United States v. Ballard*, 573 F.2d 913, 915-16 (5th Cir. 1978) (stop was unreasonable where the suspect's nervousness and a fast walking pace were the only factors presented).

In this case, the officers testified that the area in Bogalusa where these events took place was a predominately residential area with a large number of abandoned properties and is associated with known drug trafficking.[48] Officer Crain testified that he had made drug arrests in the area.[49] He also stated that about midnight on February 4, 2004, he observed White and about four other people standing in the driveway of an abandoned house.[50] Officer Crain did not notice any criminal activity occurring at that time, other than their presence on abandoned property.[51] The officers knew that the particular property was abandoned and they had received numerous complaints of people entering the property, smoking crack, and leaving other implements and signs of drug use inside.[52]

---

[48]St. Rec. Vol. 2 of 3, Trial Transcript, pp. 18-19, 36, 4/26/05.

[49]*Id.*, p. 19.

[50]*Id.*, p. 20.

[51]*Id.*, p. 37.

[52]*Id.*, p. 38.

As the officers approached to stop the unmarked cars, the individuals disbursed.[53]  White headed to the abandoned property and ignored their repeated calls to stop and return; he then took off running at full speed.[54]  After subduing White, Officer Goings retrieved the discarded object which turned out to be narcotics.[55]  White was placed under arrest and read his rights.  The officers then recovered money and the plastic bags during a search of White's person.

To determine the need for a motion to suppress, this Court must consider whether Officer Crain (and Edwards) had a reasonable suspicion that criminal activity was afoot when they detained White.  Although mere presence in a high crime area, standing alone, does not create a reasonable suspicion, it is one of the factors to be considered in the totality of the circumstances.  *Brown v. Texas*, 443 U.S. 47, 52 (1979); *United States v. Jordan*, 232 F.3d 447, 449 (5th Cir. 2000).  More importantly here, evasive behavior is also a factor.  *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

In this case, as the officers approached, White immediately took off.  When Officer Edwards exited the car and called for him to stop, he ran off at full speed.  The Fifth Circuit has recognized that the flight of a person can provide support for an officer's reasonable suspicion of criminal activity.  *Accord United States v. Miles*, No. 00-11425, 2001 WL 1465241 (5th Cir. Oct. 23, 2001).  White here also refused to comply with the officers' continued calls to stop.  Officer Goings also witnessed White drop the packet of drugs over a fence during the chase.  Based on a totality of the circumstances, any motion to suppress the evidence would not have been successful.

---

[53]*Id.*, pp. 20, 36-37.

[54]*Id.*, pp. 20-21.

[55]*Id.*, pp. 24, 43, 46-47.

The Court finds that White has failed to show that his counsel was constitutionally deficient for failing to file a motion to suppress.  *See Smith v. Puckett*, 907 F.2d 581, 585 n. 6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *see also*, *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections.").  He has therefore not shown that the state courts' decision to deny relief on this claim was contrary to, or an unreasonable application of *Strickland*.  White is not entitled to relief on this claim.

### (b)   Elicited Evidence of Prior Crimes

White complains that his counsel elicited testimony from Lt. Lentz that he had been previously arrested for possession of a crack pipe.  The State argues that White's counsel was reasonable in attempting to establish that this was not a distribution case.

The record makes clear that the focus of the defense was, at least in part, to convince the jury that there was no intent to distribute in this case.  This reference was made both by the State and defense counsel in closing arguments.[56]  The expert testimony given by Lt. Lentz was designed to establish the quantity and means attributable to the sale of crack cocaine, as opposed to mere possession for personal use.[57]  In an effort to contradict that testimony with specific regard to White, counsel asked Lt. Lentz about personal drug use and crack pipes.[58]  In doing so, counsel engaged in the following exchange with Lt. Lentz:[59]

Q:      Incidently, did you and Goings ever arrest him for drug paraphernalia?

---

[56]St. Rec. Vol. 2 of 3, Trial Transcript, pp. 94, 106, 4/27/05.

[57]*Id*., pp. 94-96.

[58]*Id*., pp. 84-86.

[59]*Id*., p. 85.

A:      I typically don't arrest them.  Detective Goings has arrested him - -

Q:      For a crack pipe he had on him?

A.      Yes, sir.

To further emphasize his point, defense counsel later asked Lt. Lentz the following question:[60]

Q.      If he had a crack pipe on him, would you say he was a crack addict?

A.      Yes, sir.

It is well settled in this circuit that an informed decision made based on trial strategy cannot be the basis for a claim of having received ineffective assistance of counsel, unless the decision was so poorly chosen that it "permeates the entire trial with obvious unfairness."  *United States v. Cotton*, 343 F.3d 746, 753 (5th Cir. 2003), *cert. denied*, 540 U .S. 11865 (2004); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002).  In this case, based on the evidence already reviewed in this Report, White was basically caught red-handed with crack cocaine and other items in sufficient quantities to establish his intent to distribute.  Without much else to defend against the charge, counsel chose a strategy to create doubt in the jurors' minds about the element of intent.  Dissuading the jury on that element would at least lower a possible conviction to possession.  The testimony elicited from the officers already established that crack-users hung out in the house where White was located and that users usually carry pipes with them.[61]  Counsel's conscious and informed decision to pursue a defense that recognized his prior use or possession of a pipe is not deficient.

---

[60]*Id.*

[61]*Id.*, pp. 38, 83.

Furthermore, based on the verdict reached by the jury, possession with intent to distribute, the jury was apparently not convinced that White was merely a user.  Thus, counsel's question had no apparent impact on the verdict and was not prejudicial.

White has not demonstrated that the state courts' decision to deny relief on this claim was contrary to, or an unreasonable application of *Strickland*.  White is not entitled to relief on this claim.

**(c)**      **Failed to Challenge Juror Guillory**

White next alleges that his counsel was ineffective for his failure to challenge Bernadette Guillory for cause or by peremptory challenge.  He bases his argument on the fact that Guillory indicated that she had been the victim of or witness to crimes, two of which were committed by persons under the influence of drugs.  White suggests that her answers to the voir dire questions demonstrated that she would not be able to fairly judge his trial, and she was not rehabilitated.  He contends, therefore, that Louisiana law required that she be excluded from the jury.  He claims that his counsel's failure to challenge her for cause or by peremptory challenge was ineffective assistance.

The State argues that White failed to establish that Guillory expressed any bias towards him.  The State further argues that Guillory had indicated that she was wrongly accused of being an accomplice in a crime, which trial counsel may have felt would make her sympathetic to White.

In reviewing this claim, the Court will have to consider whether their was a legitimate basis for counsel to have challenged Guillory.

The Sixth Amendment and Fourteenth Amendments provide a defendant with the right to a fair trial, which includes the right to an impartial jury.  *Morgan v. Illinois*, 504 U.S. 719, 727

(1992);  *Ross v. Oklahoma*, 487 U.S. 81 (1988); *Miniel v. Cockrell*, 339 F.3d 331, 338 (5th Cir.

2003).  In selecting such a jury, "[t]he standard for determining when a venire member may be

excluded for cause is whether the prospective juror's views would prevent or substantially impair

the performance of his duties as a juror in accordance with his instructions and his oath."  *Soria v.*

*Johnson*, 207 F.3d 232, 242 (5th Cir. 2000) (quoting *Wainwright v. Witt*, 469 U.S. 412, 424 (1985)).

Pursuant to La. Code Crim. P. art. 797, a juror may be challenged for cause if, among other

things, the juror is "not impartial, whatever the cause of his partiality. An opinion or impression as

to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a

juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to

the law and the evidence."

In the instant case, Guillory was a 50-year-old resident of Bogalusa, who indicated that she

lived in a neighborhood where drug activity occurred.[62]  In response to the Court's inquiry, Guillory

indicated the following:[63]

> My house was broken into twice.  I was working for Eckerd's Pharmacy and we
> were robbed, armed robbery by a person who was on narcotics.  And three years ago
> a neighbor that was across the street from her father killed his girlfriend in my
> father's house due to drugs.

She also indicated that her former brother-in-law worked for the St. Tammany police, and

she rated the trustworthiness of police a six on a ten point scale.[64]  She indicated that she felt the

criminal justice system was, for the majority, too easy on people.[65]  She later rated her willingness

---

[62]St. Rec. Vol. 2 of 3, Trial Transcript, p. 13, 33, 4/25/05.

[63]*Id*., p. 16.

[64]*Id*., pp. 19, 36.

[65]*Id*., p. 43.

to serve on the jury to be a six on a ten point scale.[66]   Later, in response to the prosecutor's questions, Guillory indicated that she in fact could judge another person:[67]

> I could judge, but I think things that have previously happened, the drug incident with the murder that was in my family and everything that happened, I think that may have a hindrance on my judgment.

Before defense counsel proceeded with voir dire, a bench conference was held where defense counsel noted that all of the persons who indicated they would rather not or could not judge in this case, with the exceptions of jurors Cone and Guillory, were black.[68]   The discussion with the Court revolved around counsel's concern that this would impact the cause challenges.

As for Guillory, she later explained that she had been falsely accused as an accomplice in the Eckerd's armed robbery incident.[69]   She noted that she had suffered a fractured jaw and was fired based on the belief that she was an accomplice.   She was later vindicated and offered her job back with a raise, which she declined.   In a later response to defense counsel's question, she indicated that she was not sure if she could be fair and impartial in deciding White's guilt or innocence.[70]

Guillory was not listed as a juror challenged for cause by the State, and the defense made no challenges for cause.   These cause challenges focused on the three jurors who indicated that they could not judge a person.   Guillory did not fall into that category.   She had indicated that she could judge.   Although her answer was qualified, she did not indicate any bias or prejudice towards White.

---

[66]*Id.*, p. 62.

[67]*Id.*, p. 66.

[68]*Id.*, pp. 67-68.

[69]*Id.*, pp. 75-77.

[70]*Id.*, p. 89.

She later gave an unsure answer about her ability to be fair and impartial based on her prior experience.  Counsel consoled her on that issue, noting his understanding.  She again did not make a statement of bias.

Based on counsel's comments, he was aware of the biases and questionable answers raised by the panelists, and he apparently made a decision to allow Guillory to remain on the jury.  Guillory did not indicate an inability to judge and render a fair verdict.  She instead indicated only that her judgment might be affected by her personal experiences.  Counsel empathized by referencing the fact that she was wrongfully accused of a crime and "brutalized."[71]  The record would indicate that counsel made a decision to leave her on the jury, rather than an unreasonable error in judgment.

Furthermore, White has not established that the challenge for cause would have been meritorious or that "an incompetent juror [was] forced upon him."  *See Williams v. Cockrell*, 46 Fed. Appx. 227, 2002 WL 1940099, *5-6 (5th Cir. Jul. 25, 2002) (quoting *United States v. Webster*, 162 F.3d 308, 342 n. 36 (5th Cir. 1999) (internal quotes omitted) (quoting *Ross*, 487 U.S. at 89)).

Having failed to establish a deficiency in counsel's performance, or prejudice arising in or from the jury chosen by counsel, his claim must fail.  He has not established that the state courts' denial of relief on this issue was contrary to, or an unreasonable application of, federal law.

  **(d)**  <u>**Failed to Object to the Prosecution's Leading Questions of Lt. Lentz**</u>

White alleges that his counsel was ineffective for failure to object to the prosecutor's questions to Lt. Lentz.  He suggests that 21 of the prosecutor's 41 questions to Lt. Lentz required only a one word answer confirming or rejecting the substance of the prosecutor's questions.

---

[71]*Id.*, p. 89.

The State opposes the claim on the basis that Louisiana law allows leading questions to be asked to an expert.

As noted by the State, La. Code Ev. art. 611(C) provides, in part, that "leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony and in examining an expert witness on his opinions and inferences." *State v. Jones*, 927 So.2d 514, 525 (La. App. 5th Cir. 2006). Furthermore, as a general rule, the failure to object to leading questions is ordinarily a matter of trial strategy which will not be questioned by the federal courts on habeas review. *Burnett v. Collins*, 982 F.2d 922, 930 (5th Cir. 1993).

As such, counsel was not deficient in failing to lodge meritless objections to any leading questions posed to Lt. Lentz during his expert testimony. *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998); *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994); *see also*, *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile motions or objections."). For this reason, White has failed to demonstrate that counsel's performance fell below constitutional standards.

The denial of relief by the state courts was not contrary to, or an unreasonable application of *Strickland*. White is not entitled to relief on this claim.

**(e)      Failed to Object to the Prosecution's Closing Argument**

White alleges that his counsel was ineffective for failing to object to the prosecutor's mischaracterization of the evidence and his improper vouching for the state witnesses in closing arguments. White specifically points to the prosecutor's apparent reference to the 66 bags found in his possession and his suggestion that they each contained a rock of cocaine.[72] He also complains

---

[72]St. Rec. Vol. 2 of 3, Trial Transcript, p. 99, 4/26/05.

that the prosecutor suggested to the jury that in judging the officers' credibility, they should keep in mind why they do what they do.[73]  This he claims was vouching for their credibility.

The State argues in its opposition that the prosecutor's reference to the 66 bags was supported by the record.  The State further contends that the prosecutor did not vouch for the officers' credibility.  Instead, he reminded the jury that credibility was their decision, and then argued why they should find the officers to be credible.

First, it is improper for a prosecutor to vouch for a witness's credibility where there is an underlying implication that the prosecutor's statements are based on additional personal knowledge about the witness or on facts not in evidence.  *See*, *e.g.*, *United States v. Munoz*, 150 F.3d 401, 414 (5th Cir. 1998).  However, such comments are not necessarily improper if it is apparent to the jury that the views are based on the evidence presented at trial rather than on personal knowledge of facts outside the record.  *See*, *e.g.*, *Nicolos v. Scott*, 69 F.3d 1255, 1282-1283 (5th Cir. 1995); *State v. Sawyer*, 350 So.2d 611, 614 (La. 1977).

In White's case, the prosecutor's comments were based on testimony from trial.  In reminding the jury of its obligation to judge the credibility of the officers, specifically Lt. Lentz, he referenced the testimony regarding his having left law enforcement to pursue more money only to return to law enforcement out of a passion for it.  There was no implication that the prosecutor's comments were based on additional personal knowledge about the officers or on facts not in evidence.  As such, the court finds that the comments do not cross an impermissible line.  Therefore, any objection by White's counsel to the comments would have been meritless.  As previously pointed to, counsel is not obliged to make meritless objections.  *See Clark*, 19 F.3d at 966.

_____

[73]*Id.*, p. 96.

White also suggests that counsel should have objected to the prosecutor's misstatement of the facts suggesting that crack was in the 66 bags found in his pocket.  Initially, "counsel's failure to object to improper remarks by a prosecutor is not ineffective assistance unless the remarks are so prejudicial as to render the trial fundamentally unfair." *Jones v. Estelle*, 632 F.2d 490, 492-93 (5th Cir. 1980).  Therefore, it is not enough to show a misstatement of the evidence to be entitled to habeas relief.  Instead, the petitioner must still demonstrate a reasonable probability that but for counsel's failure to object to the prosecutor's remarks, the verdict would have been different.  White has not met that burden here.

The prosecutor's muddled comment or misstatement in this case does not amount to prejudicial misconduct.  The prosecutor made the following statement as he concluded his closing argument:

> It is - - I suggest to you that when you see this caused by somebody on the run from the police, and you find sixty-six bags with nothing in them and you open them up, they are secured and sealed, one rock of crack cocaine in each.  I'll submit to you that if you look at the evidence and to speak the truth, that that man is guilty of possession with intent to distribute.  Thank you.

The statement is accurate with regard to the 66 bags "with nothing in them."  The balance of the statement is nonsensical where it points to opening the bags and then securing and sealing the bags.  The "one rock of crack in each" reference also does not fit with the rest of the thought and is not factual.

A review of the entire closing argument by the prosecutor reflects that he was well aware of the facts presented in the testimony and evidence.  It appears that this misstatement was no more than a mere error, which likely went unnoticed by the listener, although here easily targeted by White on his perusal of the cold transcript.  The record, however, does not demonstrate that this

comment impacted the verdict, especially in light of the other evidence presented at trial and the fact that the prosecutor's closing statement properly referenced that the 66 bags had nothing in them. *Accord*, *Bradley v. Cain*, 66 F.3d 319, 1995 WL 534722, at *2 (5th Cir. Jul. 25, 1995) (mere oral lapses or misstatements by prosecutor were not prejudicial where corrected).

The failure to object to such misstatement does not amount to constitutionally ineffective assistance of counsel in this case. Furthermore, it has been recognized by the federal courts that "[a] decision not to object to a closing argument is a matter of trial strategy." *Drew v. Collins*, 964 F.2d 411, 423 (5th Cir. 1992). Even where an objection might have some small chance of succeeding, an attorney is allowed to make a strategic choice to forego such an objection to avoid antagonizing the jury. *See Wiley v. Puckett*, 969 F.2d 86, 102 (5th Cir. 1992). In this case, defense counsel immediately gave his closing argument and redirected the jury to his more-favorable version of the facts. It would have been reasonable for him to overlook the prosecutor's error, rather than invite the jurors to focus their attention on the prosecutor's statement and inflating its importance in their minds. Counsel can hardly be deemed to have performed ineffectively in choosing to avoid that unnecessary risk.

White has not established that his counsel was deficient or unreasonable in failing to lodge an objection to the prosecutor's closing argument. The denial of relief by the state courts was not contrary to, or an unreasonable application of *Strickland*. White is not entitled to relief on this claim.

## VI.    Recommendation

It is therefore **RECOMMENDED** that James White's petition for issuance of a writ of habeas corpus be **DENIED** and **DISMISSED WITH PREJUDICE**.

41

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings  and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[74]

New Orleans, Louisiana, this 19th day of April, 2011.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[74]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.